UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Willard B. Shapira, Karen Loibl, and Ulric C. Scott III, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>The City of Minneapolis,<br><br>　　　　　　　　　　　　　　Defendant. | Case No. 06-CV-02190-MJD-SRN<br><br>**ORDER ESTABLISHING A CY PRES FUND AND APPROVING DISTRIBUTION OF THE FUND TO THE MINNEAPOLIS PUBLIC SCHOOLS** |

## **Procedural Background**

The Plaintiffs and Defendant City of Minneapolis (the "City") entered into a Settlement Agreement (the "Settlement") in the above-captioned class Action (the "Action"), which Agreement (Doc No. 105-2) was dated September 11, 2008. On December 30, 2008, the Court entered an Order Preliminarily Approving Class Settlement (Doc No. 115).

A notice setting forth the terms of the parties' settlement and the rights of Settlement Class Members ("Notice of the Class Action Settlement") was mailed on January 15, 2009 by the Settlement Claims Administrator, Analytics, Incorporated ("Analytics") to 18,389 members of the Settlement Class. Because several names were inadvertently omitted from the list of class members, 56 additional notices were sent to those individuals on February 20, 2009.

On February 27, 2009, and April 2, 2009, the Court conducted Final Approval Hearings in this case, which became known to the public as the "Stop on Red" camera case. The Class Representatives and the Settlement Class were represented at these hearings by James P. Cullen of Cullen Law Firm, Ltd. and Marshall H. Tanick and Charles Horowitz of Mansfield, Tanick & Cohen, P.A. James A. Moore, Assistant Minneapolis City Attorney, appeared on behalf of and represented the City. The Court heard from all persons who chose to appear at the Final

Approval Hearings and on April 2, 2009 the Court issued an Order for Final Judgment (Doc No. 399) in which it approved the Settlement Agreement, finding that it was fair, reasonable, adequate, and in the best interests of the Settlement Class.

On May 18, 2009, funds totaling $2,530,570.41 were received by Analytics for distribution to Class Counsel, the Class Representatives, and qualifying Settlement Class Members ("Class Settlement Fund"). Over the course of multiple distributions, Analytics produced 32,508 checks with a total value of $2,692,438.79. Of these, 26,240 checks with a total value of $2,354,921.40 were cashed by the payees, leaving $175,649.01 in the fund.

Pursuant to the terms and provisions of the parties' Settlement Agreement (Doc No. 105-2), Analytics returned $135,550.23 to the State of Minnesota and $4,661.56 to Hennepin County. One check for $111.66 was returned by a Settlement Class Member and was deposited in the Settlement Fund, while two Settlement Class Members requested that $334.99 of their allotted distribution be contributed to a *cy pres* fund. After all reasonable and practical methods of distributing the funds were exhausted by Analytics and the parties' legal counsel, a total of $35,883.87 remains in the Settlement Class Fund (Doc No. 406).

### Legal and Factual Analysis

Principles of equity govern the distribution of funds to which no party has a right. *Powell v. Georgia-Pacific Corp.*, 119 F. 3d 703, 706 (8th Cir. 1997). When the funds arise due to a class action settlement, it may be appropriate to use *cy pres* principles to distribute these unclaimed funds. *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F. 3d 679, 682 (8th Cir. 2002). *Cy pres* distribution is often used when class members cannot be easily identified or located. *Powell*, 119 F.3d at 706. It is particularly appropriate when there are a large number of class members. *See id.* (upholding a *cy pres* distribution from a settlement that involved over 2,000 class members).

The Stop on Red Settlement involved over 18,000 class members. The Plaintiffs and Defendant City have submitted and filed (Doc No. 406) a sworn Final Accounting of Distribution Efforts and Settlement Fund prepared by Jonathan Reid of Analytics. This report explains the extensive efforts taken by Analytics in distributing funds to the Settlement Class Members, including the preparation and delivery of 32,508 checks to payees over the course of multiple distributions. Because further efforts to distribute these funds to class members would be impracticable, it is both timely and appropriate to distribute these funds according to *cy pres* principles. In fact, a *cy pres* distribution was contemplated by the Plaintiffs and the City in their Settlement Agreement and no other party has objected to a *cy pres* distribution.

According to the *cy pres* doctrine, these "unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Airline Ticket Comm'n*, 307 F. 3d at 682. Under the broad equitable powers that underlie the distribution of *cy pres* funds, however, courts may distribute these funds to benefit a public interest, even if that interest is unrelated to the plaintiff's original claims. *E.g. Van Gemert v. Boeing, Co.*, 739 F.2d 730, 737 (2nd Cir. 1984) (holding that trial courts have broad discretionary powers when distributing unclaimed class funds); *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D.Ga. 2001) (collecting cases where *cy pres* funds were distributed to charitable organizations unrelated to the original claims).

This lawsuit arose out of a City of Minneapolis semaphore camera program and ordinance that was presumably intended to promote and ensure driver compliance with intersection traffic control signals. Though the parties and others disputed the effectiveness and legality of the "Stop on Red" camera ordinance, it is beyond dispute that driver compliance with

traffic laws benefits everyone. To this end, a *cy pres* distribution that funds and furthers the goal of driver compliance with uniform rules of the road is well within the Court's broad equitable powers under the *cy pres* doctrine.

Minneapolis Public Schools ("MPS") operates a Driver's Education program for its students. This program is approved by the Minnesota Department of Public Safety and utilizes training providers from the private sector. There are currently no discounts offered to low income students and, consequentially, some of these low income students are unable to obtain driver's education. MPS has proposed establishing a Driver's Education Tuition Support Fund ("Support Fund") for students who cannot currently afford the Driver's Education classes. Utilizing monies received as a result of a *cy pres* distribution, the Support Fund would provide reimbursement vouchers or scholarships to qualifying students, thereby enabling them to receive driver training that is otherwise unavailable to them. Pursuant to an understanding reached by Class Counsel with MPS, the *cy pres* monies contributed to the Support Fund would not be comingled with the school district's other funds.

Having reviewed the materials and information submitted by Plaintiffs' Class Counsel and Counsel for the City with regard to the appropriateness of a *cy pres* distribution and the suitability of the Minneapolis Public schools as the designated recipient of such a distribution,

**IT IS HEREBY ORDERED** that:

1. All funds presently remaining in the Class Settlement Fund held and maintained by Analytics, determined and reported by Analytics on February 20, 2012 to be the sum of $35,883.87, are hereby designated as a *Cy Pres* Fund, and such funds shall be distributed to the Minneapolis Public Schools, as herein directed, for deposit into the Driver's Education Tuition Support Fund.

2.   The Minneapolis Public Schools Drivers Education Tuition Support Fund is found to be an appropriate and suitable *cy pres* recipient. Accordingly, within five (5) days of this Order, Analytics shall disburse the *Cy Pres* Fund of $35,883.87 by issuing appropriate certified funds made payable to the Minneapolis Public Schools. The certified funds shall be tendered by Analytics to Class Counsel, James P. Cullen, who shall deliver the funds, together with a copy of this Order, to the appropriate personnel within the Minneapolis Public Schools who are charged with implementing and administering the Driver's Education Tuition Support Fund.

3.   Settlement Class Members who have not already cashed the settlement checks sent to them by Analytics are deemed to have forfeited their claims in the Class Settlement Fund.

4.   This Court shall have and retain jurisdiction to assure compliance, implementation and, to the extent necessary and appropriate, enforcement of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date:  April 26, 2012                              s/ Michael J. Davis
                                                   Michael J. Davis
                                                   Chief Judge
                                                   United States District Court